UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

JOHN W. OLLER, JR.                                         CIVIL ACTION NO. 611-CV-02207

VERSUS                                                     JUDGE RICHARD T. HAIK, SR.

NANCYE C. ROUSSEL, individually and in                     MAGISTRATE C. MICHAEL HILL
her official capacity as Head of the Department
of Communicative Disorders at the University
of Louisiana at Lafayette; A. DAVID BARRY,
individually and in his official capacity as Dean
of College of Liberal Arts at the University of
Louisiana at Lafayette, MARTIN J. BALL,
Individually, Professor of Communicative
Disorders at the University of Louisiana at Lafayette

## RULE 26(f) REPORT

Trial Date:   July 8, 2013.

Pretrial Conference Date: June 11, 2013.

Type of Trial (Bench or Jury):  Jury.

Estimated length of trial is court days: 3 to 5.

A joint meeting of counsel was held on August 17, 2012 by telephone conference. The following counsel participated:

   John B. Wells representing plaintiff JOHN W. OLLER

   Cearley W. Fontenot representing NANCYE C. ROUSSEL, A. DAVID BARRY, MARTIN J.

BALL.

2. Affirmation Regarding Initial Disclosures:

   The parties have complied with the initial disclosure requirements of

Fed.R.Civ.P.26(a)(1).

1

3. **Jurisdictional Basis:**

Plaintiff claims jurisdiction over this case under 28 U.S.C. §§ 1331, 1343(a)(3) and U.S.C. § 1343(a)(4) pursuant to the First and Fourteenth Amendments to the United States Constitution; Constitution; 42 U.S.C. § 1983, 28 U.S.C. § 2201(a), to secure declaratory relief; and under 28 U.S.C. § 2202 and 28 U.S.C. § 1367.

4. **Brief Description of Claims:**

    a    The specific facts which support the claim or claims, alleged by plaintiff:

The named defendants have individually and in the aggregate acted to remove teaching opportunities from Dr. Oller and create a hostile environment concerning his views on semiotic theory, milestones of normal speech and language development, linguistics, genetics, evidence of intelligent design, factors involved in the causation of autism and other neuropathologies, the origins of the language capacity and of the complexities of genetic endowments that cannot be explained by chance. This environment has been consistently maintained over the last number of years, and recent retaliatory actions intended to marginalize this condition. Although Dr. Oller's views are not the majority view of the department, his extensive education and experience support him being allowed to present his ideas. He has even been deprived of the right to use his own textbook, although it is common practice for other professors to use their own texts. This is in consonance with the academic freedom policies of the University of Louisiana at Lafayette. Instead Dr. Oller has not been allowed to teach graduate level classes within his field and prospective students have been discouraged from signing up for his classes.

The disagreement with his professional ideas and theories is a cover for Dr. Oller's oppsoition to religious beliefs. This included statements by defendants to the effect that they do not value Dr. Oller's ideas "from creationism to vaccinations to TRN [sic] [TNR (True Narrative Representations)] theory." The defamatory campaign against Dr. Oller was conducted not only among the faculty but the student

2

body as well. The emphasis on Dr Oller's beliefs, described as "creationism" is an underlying issue in the attacks on Dr. Oller.

As well as restricting Dr. Oller's textbooks and classes, the defendants have acted to cancel other presentations conducted by Dr. Oller. He has even been excluded from participation in a bi-monthly CODI colloquium. Dr. Oller has also been prevented from attending curriculum planning discussions, He has been informed by defendant that they would block any course proposal he presents.

    b.    The law and any contractual provision supporting the claim.

The actions taken against Dr. Oller are in violation of the Faculty Handbook which *inter alia* defends the faculty workload tracks. The actions are also a violation of the Board of Regents' Statement on Academic Freedom, Tenure and Responsibility. Dr. Oller reasonably relied to his detriment upon these policies in accepting a transfer of employment to the University. The academic freedom provisions underline Dr. Oller's right to free speech which has been curtailed by defendant. Additionally, the animosity towards Dr. Poller's religious beliefs, as translated into punitive employment actions, are a violation of his right to believe and worship as he pleases. In this respect, he is being discriminated against pursuant to 42 U.S.C. § 1983. He further has a right to freedom from retaliation which has been widely flouted by defendant..

Dr. Oller, as a tenured faculty member, is not an at-will employee. He has certain contractual and legal governed by the University's Faculty Handbook, and the Board of Supervisors Bylaws and Rules.

    c.    The remedy prayed for as to each defendant.

Dr. Oller requests a preliminary and permanent injunction, restraining defendants, their agents, servants, employees, officials, or any other person acting in concert with them or on their behalf, both now and in the future, from discriminating against Dr. Oller for his viewpoints on matters of public concern by denying him all opportunities to

3

lecture and teach doctoral, masters, and undergraduate CODI students, and censoring his textbooks relevant to the classes he teaches; and enjoining Defendants' specific performance of their contractual and promissory obligations to Dr. Oller. Dr. Oller further requests this Court issue a declaratory judgment stating that Defendants' discrimination, retaliation, and restrictions imposed on Plaintiff as set forth herein violated his right to freedom of speech and religion as guaranteed under the First Amendment to the United States Constitution and his rights under Louisiana law. Plaintiff asks for nominal damages, and compensatory damages in an amount to be determined by the evidence, for the violation of Plaintiff's constitutional and state law rights, costs and expenses of this action, and a reasonable attorneys' fees award, in accordance with 42 U.S.C. § 1988.

**5. Brief Statement of Responses:**

In addition to the Affirmative Defenses raised in their Answer to Plaintiff's Original Complaint, Defendants assert the following:

    a.    The basis or lack thereof for each claim;

Defendants deny any and all liability to Plaintiff in this matter. Plaintiff has not been denied by the department or the departmental administration the opportunity to teach any CODI students. Within the Department of Communicative Disorders, there are two structures which address this claim. First, the doctoral program in Applied Language and Speech Sciences, as is the case in other doctoral programs at the university, establishes graduate level course offerings based upon the expertise of individual faculty, student interest in areas for advanced studies, direction of research for dissertations (students establish their committees based on faculty interest, areas of expertise and research) and program requirements. Course offerings at the graduate level are dependent on student enrollment. For several years, the department scheduled graduate level courses for Plaintiff which reflected his expertise and interests. Over several semesters, no students enrolled for these classes and they were subsequently canceled

because of enrollment factors. At the same time, Plaintiff has had no graduate students since 2007 who elected to do research with Plaintiff as dissertation director or even as a member of their dissertation committee. He was, therefore, not denied the opportunity to teach graduate students.

At the undergraduate level, which is largely an applied program for students intending to become licensed speech pathologists, Plaintiff had no experience or qualifications to teach applied or clinical courses. Plaintiff received a Ph.D. degree from the University of Rochester in 1969. His area of expertise and research is listed as Linguistics with a dissertation entitled: "The Coding of Information in Natural Languages: A Psycholinguistic Theory". Plaintiff does have expertise in "language acquisition and development" and, marginally, in communicative disorders from a theoretical standpoint in linguistics. He does not, however, have any background in "autism causation and remediation" as he asserts since his basis for these claims require an expertise in biology, microbiology, physical neurology, immunology and/or extensive clinical experience in communication disorders, specifically autism. Plaintiff has absolutely no clinical training or license.

In other, more theoretical courses, there exists a strict articulation of content between courses at various levels in order to master concepts and materials required to progress through their degree programs at the bachelor's and master's levels. Accreditation mandates certain material concepts be mastered by students to progress to degree completion and licensure. Over the last several years, students who had taken Plaintiff's classes reported that they were not presented with the necessary material as they proceeded to subsequent classes and that he refused to follow content rubrics as designed by the profession and the departmental curriculum committee. This narrow, highly marginal approach to communication disorders also explains the reason the departmental curriculum committee and department head(s) would not allow the use of textbooks authored by Plaintiff.

Plaintiff's autism textbook as opposed to the other two textbooks was based on the Wakefield study determining a causal relationship between autism and vaccinations. The Wakefield study was

5

disproved, and the CDC made a professional statement refuting the link between autism and vaccinations. Plaintiff disagrees with the CDC, but has no qualifications, training, or credentials in the clinical approach for autism or in the area of autism vs. vaccinations. In fact, Plaintiff refused to perform clinical studies for his book on autism. Furthermore, the curriculum committee elected not to use his textbook for the CODI 118 and 274, because the courses were multi-section courses and much of the required material was not covered by his textbook. He was allowed to use his textbook as a secondary source in his classes.

Defendants do not restrict what Plaintiff teaches in his classes. Even in the case of the textbook, any instructor is at liberty to assign supplementary texts and ask their students to read them.

Defendants did not have a contract with Plaintiff. In order to prevail on a breach of contract claim, Dr. Oller must prove the existence of a contract between Defendants and himself. A handbook does not create a contract between an employee and his employer. UL's Faculty Handbook is primarily informational in nature and does not constitute a binding promise by UL Faculty with other UL Faculty. UL's Faculty Handbook does not constitute a contract between the parties. There was no contract between Dr. Roussel and Dr. Barry and Dr. Oller.

    b.    All affirmative defenses asserted and the legal bases therefor;

- Defendants deny any and all liability to Plaintiff, on the basis that he was not denied by the department or the departmental administration to opportunity to teach any CODI students, and he had no contract by and between Dr. Roussel and Dr. Barry.

- Plaintiff has failed to state a claim or cause of action against these Defendants upon which relief can be granted as no contract existed between Plaintiff and Defendants.

- Defendants are not guilty of any violations of civil rights granted by state or federal law.

- Defendants plead all statutory and common law immunities to which they are entitled, specifically including qualified immunity as to allegations against Defendants in their "individual" capacity.

- Defendants aver the defense of comparative fault, and aver that Plaintiff's damages, if

6

      any, arose solely from his own fault or from the fault of others over whom Defendants have no control or responsibility. Specifically, as it relates to Dr. Oller's low class enrollment of graduate level courses.

    c.    Whether the dispute in question is one of law, fact, or contractual interpretation.

      The dispute in question is one of law and fact.

### 6. Anticipated Amendments to Pleadings and Motions

    Plaintiff may amend the Complaint in accordance with the Scheduling Order.

    Parties may file Motions for Summary Judgment after Discovery.

### 7. Anticipated Expert Witnesses

    As this matter is in the early phases of discovery neither party has retained any experts, nor have the parties made a determination as to whether or not they will need to call expert witnesses to testify at the trial of this matter.

### 8. Discovery Plan:

    The parties have received a discovery plan in the Scheduling Order previously issued in this case. At this time, the parties do not believe that a more specific Scheduling Order is required. Parties do not anticipate exceeding the maximum number of ten (10) depositions with a maximum time of seven (7) hours, twenty-five interrogatories, twenty-five requests for admission pursuant to the Federal Rules of Civil Procedure, however, if this changes throughout the course of discovery, the parties will notify this Honorable Court of the necessity for additional discovery.

### 9.    Stipulations:

    a.    The University of Louisiana at Lafayette (UL), is an institution of higher learning and by policy pledges to preserve faculty academic freedom, including the freedom to "study discuss, investigate, teach, conduct research, and publish as appropriate to their respective roles and responsibilities."

    b.    Plaintiff John W. Oller, Jr., is a resident of Lafayette, Louisiana. He is the Doris

B. Hawthorne/Board of Regents Support Fund Endowed Professor IV in the CODI department at the University of Louisiana at Lafayette.

    c.    Defendant Nancye C. Roussel is an Associate Professor of Communicative Disorders at the University of Louisiana at Lafayette. She has served as Head of the CODI department since the Fall of 2008.

    d.    Defendant A. David Barry is the former Dean of the College of Liberal Arts at the University of Louisiana at Lafayette.

    e.    Defendant Martin J. Ball is a Professor of Communicative Disorders at the University of Louisiana at Lafayette. He served as Chair of the CODI Department from April 2004 through the spring semester of 2008.

    f.    Dr. Oller's enthusiasm for his work extends outside the classroom, demonstrated by his active community and charitable service in areas of public concern related to his scholarly expertise.

    g.    On April 21, 2006, CODI Professor Nicole Müller wrote an email message to the CODI faculty relating her concerns about the content of Dr. Oller's faculty website.

    h.    On April 25, 2006, Damico took the occasion to respond to Müller's email.

    i.    On November 25, 2008, Dr. Oller gave a presentation at the CODI Ph.D. Colloquium (the CODI department's bimonthly lecture series to Ph.D. students, faculty, and others in the community) on "Vaccines, Epidemic Neurodevelopmental Disorders, and Autism: Causes and Recoveries." He there addressed autism, vaccines, and how neurotoxins, disease agents, adventitious animal proteins, and their interactions interfere with human biochemistry, and the consensus of toxicologists on such problematic outcomes.

    j.    Dr. Oller was the lead author of *Milestones: Speech and Language Development Across the Lifespan* (Plural Publishing, Inc.) (499 pages, plus a multimedia DVD).

8

k.  In the spring of 2010, Defendant Roussel reassigned the instruction of CODI 274 from Dr. Oller to a different professor.

l.  The CODI Curriculum Committee is composed of CODI faculty and advises the department head on matters relating to department policy, courses, and other functions. Decision-making authority on such issues resides in the department head.

m.  On February 16, 2011, Dr. Oller met with Defendant Roussel in her office for his annual performance evaluation.

n.  Defendant Roussel stated that she received approximately 200 emails with concerns about Dr. Oller's teaching on vaccinations and autism, which were generated from Change.org.

o.  In May of 2011 the CODI Curriculum Committee recommended the textbooks to be used in CODI 118 and 274 classes.

p.  The textbook that Defendant Roussel requires for Dr. Oller's CODI 274 course (now forbidden to CODI majors) and for the course she newly created to replace it (CODI 275) is one and the same.

q.  On September 30, 2011, after several weeks of use of the required textbooks, Dr. Oller emailed his request to CODI Curriculum Committee Chair Professor Müller seeking committee reconsideration of the recommendation to Dr. Roussel of the textbooks for CODI 118 and 274. He asked that the Committee propose that he use the texts he authored for these classes in the upcoming fall 2012 semester.

r.  The CODI department class assignment schedule revealed he was slated to teach both CODI 118 and 274 in the spring 2012 semester.

s.  In his message to Professor Müller, Dr. Oller observed that the required texts were inferior to his own in that they are not as up to date in research, as broad in coverage of

9

subject matter, coherent in organization, or possessing the quality of his dynamic and interactive digitally searchable supplemental materials. He further noted that he was preparing a list of the numerous errors in these texts both in analysis and definitions, as well as in contradictions among co-contributors. Dr. Oller also offered that if permitted to use his own texts, he would insert any area of non-overlap between the currently required texts and his own and supplement his instruction with such material.

　　t.　　Defendant Roussel moved Dr. Oller's CODI 118 class to a room that only accommodated 30 students.

　　u.　　Defendant Roussel in an email message to Dr. Oller informed him that she adjusted his teaching assignments for the spring 2012 semester.

　　v.　　The adjusted teaching responsibilities Defendant Roussel assigned Dr. Oller for the spring 2012 semester include teaching the CODI 274 class to non-CODI students, and teaching two sections of UNIV 100.

　　w.　　All faculty members in the CODI department may and do teach CODI department undergraduate, graduate, or Ph.D. students and non-CODI department undergraduates.

　　x.　　At all times relevant herein, Dr. Oller has been classified as a Track 4 professor by UL.

　　y.　　The Board of Supervisors under which UL is governed has issued "Board Bylaws and Rules,"

　　z.　　The University promises its faculty the freedoms outlined in its various Academic Freedom guarantees without restraint or censorship by University officials.

　　aa.　　Tenured faculty members at a public university have a significant interest in commenting on matters of public concern related to their scholarly expertise.

10. **Major Issues of Fact and Law in Dispute:**

   a.   Whether plaintiff's constitutional rights were violated;

   b.   Whether plaintiff has a valid cause of action for any claims of breach of contract/detrimental reliance; and

   c.   Whether plaintiff is entitled to recover damages.

11. **Related Case Information:**

   None.

12. **Rule 16 Conference:**

   Plaintiff believes a Rule 16 conference would be beneficial.

   Defendant believes a Rule 16 conference would be beneficial.

   Parties are available at 10:00 a.m. via telephone conference on September 18, 19 and October 9, 10.

13. **Alternative Dispute Resolution (ADR):**

   Plaintiff believes a settlement conference with the Magistrate Judge would be beneficial.

   Defendants are not opposed to a settlement conference with a Magistrate Judge.

   Counsel affirms that at the Rule 26(f) conference, they discussed the possibility of resolving this dispute through ADR. Plaintiffs would consider any ADR, at the expense of Defendants. Defendants are not necessarily opposed to ADR, however, at this time, the most appropriate method and the stage of litigation at which ADR might be appropriate have not been determined.

14. **Consent Trials:**

   The parties do not consent to a trial before a Magistrate Judge.

15. **Track Assignment:**

   No change in track assignment is required. The case is assigned to the general track, and the parties are not requesting an accelerated or standby docket at this time.

**16. Electronic Courtroom:**

The parties do not expect this case to be document extensive (i.e. requiring the admission of more than twenty-five (25) documents), however, if this changes throughout the course of discovery, the parties will notify this Honorable Court of this change and present such evidence by CD-ROM.

**17. Electronically Generated Exhibits or Aids:**

Plaintiff intends to display power point opening and closing arguments and the following exhibits electronically:

   a. Excerpts from the University of Louisiana at Lafayette Faculty Handbook.

   b. Excerpts from the University of Louisiana System Board of Supervisors Bylaws.

   c. Excerpts from any and all correspondence, including emails, by or concerning John D. Oller, Jr. concerning the items subject of this litigation.

   d. Excerpts from Curriculum concerning CODI 118, 274 and 275.

At this time Defendants do not anticipate using any electronically generated exhibits or demonstrative aids at the trial of this matter, however, in the event this changes throughout the course of the matter, Defendants will notify this Honorable Court of this change.

**18. Phase II Discovery:**

Parties are to notify this Court whether "Phase II" discovery as noted in Paragraph 8 of the Scheduling Order will be needed.

**19. Handicap Provisions:**

None.

I HEREBY CERTIFY THAT THE FOREGOING IS ACCURATE AND COMPLETE. ORIGINAL OR FAX SIGNATURES OF COUNSEL OF RECORD

_____         _____
John B. Wells                                          Cearley W. Fontenot

Date: 9-4-2012                                      Date: 9.4.2012

12