RECEIVED
AUG 2 2 2014
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| Oller | Civil Action No. 11-02207 |
| versus | Judge Richard T. Haik, Sr. |
| Roussel, et al | Magistrate Judge C. Michael Hill |

**MEMORANDUM RULING**

Before the Court is are two (2) Motions For Partial Summary Judgment filed by defendants, Nancye C. Roussel ("Dr. Roussel"), individually and in her official capacity as Head of the Department of Communicative Disorders at the University of Louisiana at Lafayette ("ULL"), A. David Barry ("Dr. Barry"), individually and in his official capacity as Dean of College of Liberal Arts at ULL, and Martin J. Ball ("Dr. Ball"), individually and as Professor of Communicative Disorders at ULL, On Defamation Claim Against Dr. Roussel [Rec. Doc. 91] and Dr. Barry [Rec. Doc. 92], plaintiff's Oppositions to Dr. Roussel's Motion[1] [Rec. Doc. 106] and to Dr. Barry's Motion[2] [Rec. Doc. 103], defendants' Replies thereto [Rec. Docs. 125; 123, *respectively*] and plaintiff's Sur-reply to defendants' Reply to Dr. Roussel's Motion [Rec. Doc. 130].

Also before the Court are plaintiff's "Cross-Motion For Summary Judgment On the Issue of the Defamation Claim" against Dr. Roussel [Rec. Doc. 106] and plaintiff's "Cross-Motion For Denial Or Deferral Pursuant To Rule 56(d)" against Dr. Barry [Rec. Doc. 103], defendants' Oppositions to the Cross-Motions [Rec. Docs. 125; 123, *respectively*] and

---

[1] Plaintiff's Opposition also included a Cross-Motion For Summary Judgment against Dr. Roussel (*See, infra*).

[2] Plaintiff's Opposition also included a Cross-Motion against Dr. Barry (*See, infra*).

plaintiff's Reply to defendant's Opposition to Cross-Motion against Dr. Barry [Rec. Doc. 118].

## I. Background

Plaintiff, a tenured professor in the Department of Communicative Disorders ("CODI") at ULL since 1997, filed this complaint on December 24, 2012, asserting actions under 42 U.S.C. § 1983 for violation of his First Amendment right to free speech and his right to freedom from retaliation as well as state law claims of breach of contract[3] and detrimental reliance. *R. 1.* On November 1, 2013, plaintiff filed an amended complaint against all three defendants asserting an additional state law claim for defamation against each defendant[4]. *R. 46.* Plaintiff alleges that defendants in their individual capacity, used defamatory words to describe plaintiff, his book, his works and his abilities as a professor. *Id.* Plaintiff further alleges the words were published by the defendants to students, employees and faculty members; that the works were false and made with actual malice in that defendants knew the words were false or in the alternative were made with reckless disregard for the truth. *Id.*

## II. Legal Standards

Summary judgment is appropriate if, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). The moving party bears the initial burden of demonstrating to the court the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can carry its burden by citing to facts – or absence of facts – in the record to show there is no genuine issue of material fact. FED.R.CIV.P. 56(c). If the

---

[3] On February 3, 2014, the Court granted defendants' Motion for Partial Summary Judgment as to plaintiff's breach of contract claims. *R. 61.*

[4] Plaintiff's motions do not address Dr. Ball's liability for defamation.

moving party meets its burden, the burden shifts to the non-moving party. *Lacoste v. Pilgrim Int'l*, 2009 WL 126847, at *2 (E.D. La. Jan. 15, 2009). The non-movant must then show that a genuine issue of material fact exists. *Id.* "The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial." *Ticknor v. Rouse's Enterprises, LLC*, 2014 WL 668930, *2 (E.D. La. Feb. 20, 2014).

"Defamation is a tort which involves the invasion of a person's interest in his or her reputation and good name. Four elements are necessary to establish a defamation cause of action: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. Thus a plaintiff, in order to prevail in a defamation action, must prove that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages." *Trentecosta v. Beck*, 703 So.2d 552, 559 (La. 1997). If any of these elements is lacking, the plaintiff's cause of action fails.

Proof of the truth or substantial truth of a defamatory remark is a valid defense in a civil suit for defamation. La. R.S. 13:3602. Privilege is also a defense to a defamation action. Privileged communications are divided into two general classes: (1) absolute; and (2) conditional or qualified. An absolute privilege exists in a limited number of situations, such as statements by judges and legislators in their official capacities. *Kennedy v. Sheriff of East Baton Rouge*, 935 So.2d 669, 681 (La.2006). "In a broader number of instances, statements enjoy a conditional privilege. A conditional privilege is applicable if the communication is made (a) in good faith,[5] (b) on any subject matter in which the person communicating has an interest or in reference to which he has a duty, (c) to a person having a corresponding interest or duty. This privilege arises from the social necessity of permitting

---

[5] "Good faith" means a statement made with reasonable grounds for believing it to be true.

3.

full and unrestricted communication concerning a matter in which the parties have an interest or duty, without inhibiting free communication in such instances by the fear that the communicating party will be held liable in damages if the good faith communication later turns out to be inaccurate." *Mbarika v. Board of Sup'rs of Louisiana State University*, 992 So.2d 551, 563 (La.App. 1 Cir.,2008); *see also Kennedy*, 935 So.2d at 681.

A privilege is abused if the publisher (a) knows the matter to be false, or (b) acts in reckless disregard as to its truth or falsity. *Kennedy* at 686 (citing *Trentecosta*, 703 So.2d at 564 n. 16). Mere negligence as to the falsity (or lack of reasonable grounds for believing the statement to be true) is not sufficient to prove abuse of the conditional privilege. Instead, knowledge or reckless disregard as to falsity is necessary for this purpose. *Cook v. American Gateway Bank*, 49 So.3d 23, 34 (La.App. 1 Cir.,2010) (citing *Kennedy* at 688). "[F]ailure to investigate does not present a jury question on whether a statement was published with reckless disregard for the truth. Under this standard, even proof of gross negligence in the publication of a false statement is insufficient to prove reckless disregard." *Kennedy* at 689.

In considering the definition of "reckless disregard," the *Kennedy* court noted that the Louisiana Supreme Court has explained that only those false statements made with a high degree of awareness of their probable falsity meet the reckless disregard standard. *Kennedy* at 688 ("the Supreme Court reiterated that reckless disregard requires a plaintiff to prove that the publication was deliberately falsified, or published despite the publisher's awareness of probable falsity."). Citing *St. Amant v. Thompson,* 390 U.S. 727 (1968), the *Kennedy* court held that there must be sufficient evidence to permit the conclusion that the defendant "was highly aware that the statements were probably false." *Id.*

The practical effect of the assertion of the conditional or qualified privilege is to rebut the plaintiff's allegation of fault and to place the burden of proof on the plaintiff to establish

4.

abuse of privilege. *Dyas v. Shreveport Police Dept.*, 136 So.3d 897, 905 (La.App.2d Cir.2/26/14).

### III. Analysis

#### A. Defendants' Motions For Partial Summary Judgment

Defendants contend that plaintiff has failed to produce any evidence which supports his claim for defamation against Dr. Roussel or Dr. Barry. Defendants assert that while plaintiff identified six possible witnesses who allegedly had knowledge of defamation: Dr. Martin Ball, Dr. Carol Bruder[6], Dr. Holly Damico, Dean Jordan Kellman, Dr. Nicole Mueller and Dr. Jack Damico, the deposition testimony of these witnesses, as well as the discovery in general, fails to establish that a defamatory statement was made by either Dr. Roussel or Dr. Barry. Defendants further assert that the statement and documents relied on by plaintiff to establish his defamation claims fail to establish a prima facie case of defamation.

Plaintiff's defamation claims against Dr. Roussel are based on the following allegations: (1) she told plaintiff his students hate him, *R. 91-5, Exh. 3, Plaintiff's Depo., p. 354, l. 8-9*; (2) she wrote emails dated May 12, 2010 and May 16, 2012 to plaintiff about recipients of the "Oller Scholarship," which she discussed with ULL's faculty members involved in the scholarship selection process, *R. 91-5, Exh. 3, Plaintiff's Depo., pp. 354-362, R. 91-6, Exh. 4, 2010 emails*; (3) she wrote an October 6, 2011 letter to Dr. Barry stating that she believed it was in the Department's best interest if plaintiff was removed from teaching the "Introduction to Communicative Disorders" course, *R. 106-9, Exh. 6*; and (4) her name was affixed to a Discussion Paper dated March 3, 2011, regarding the relocation of plaintiff from ULL's Department of Communicative Disorders ("CODI") Department, *R. 106-4, Exh.*

---

[6] At the time of this incident, Dr. Carolyn Bruder was the Provost and Vice President for Academic Affairs.

5.

*1*.[7]  Plaintiff contends that these communications constitute malice for purposes of defamation because Dr. Roussel knew they were false. *R. 106*. He further contends that the statements were made by Dr. Roussel and Dr. Barry "out of their dislike for [him], particularly for his viewpoints on issues such as vaccinations and autism." *Id.*

Plaintiff also contends that although Dr. Barry's name was not on the Discussion Paper, he is liable for defamation because he was at the meeting where it was presented to Dr. Bruder.[8] *Id.* The deposition of Dr. Jack Damico was taken on June 25, 2014. *R. 123-2, Exh. 2*. Dr. Damico testified that he had authored the Discussion Paper without input from Dr. Roussel but placed Dr. Roussel's name on it because she was his department head. He stated that he did not give a copy of the Discussion Paper to Dr. Roussel or Dr. Barry prior to the meeting and that Dr. Bruder did not discuss the Discussion Paper in the meeting because he did not present it to her until the conclusion of the meeting. *R. 123- 2, Exh. 2, Damico Depo., pp. 83-85, 87, 91*. Dr. Damico noted that Dr. Barry addressed a number of the same issues he had raised in the Discussion Paper. *Id.*

As to the alleged statement made by Dr. Roussel to plaintiff, there is no evidence that any such statement was published by Dr. Roussel to a third party. The first two elements of a defamation action is a statement which is published. Thus, this allegation cannot support a claim of defamation. Which leaves the three communications—the 2010 emails between Dr. Roussel and plaintiff ("the Emails"), the October 6, 2011 letter to Dr. Barry ("the Letter"), and the Discussion Paper—as the basis of the defamation claims against Dr.

---

[7] The following names are affixed to the Discussion Paper – "Nancye Roussel, Head of [CODI] Department; Jack S. Damico, Eminent Scholar Chair; and, Martin J. Ball, Director of the Hawthorne Research Center." *Id.*

[8] Plaintiff cites the deposition of Dr. Barry in support of his statement, however, it is not attached to plaintiff's opposition nor has the Court been able to locate it in the record.

Roussel and Dr. Barry.

It is undisputed that the contents of the Emails between plaintiff and Dr. Roussel were published to Dr. Barry and that the Letter authored by Dr. Roussel was published to Dr. Barry and Dr. Bruder. The contents of the Emails concerned the faculty members on the selection committee—plaintiff, Dr. Roussel, Dr. Barry, Dr. Palmer and Adele Bulliard(a representative of the scholarship office)—who selected the recipient of the Oller Scholarship. *R. 91-6.* In her Email responding to plaintiff's questions about the make-up and procedures of the selection process and his list of possible recipients, Dr. Roussel explained to plaintiff that, as the donor, he was a member of the selection committee and that she had placed the applications for the Scholarship in his box "several weeks ago" but had never heard from him. She stated that she would "go with whomever you choose to receive the award as long as it is a student who applied." *Id.* Addressing plaintiff's complaints regarding the publication of scholarship donors, Dr. Roussel stated that she believed plaintiff was more concerned with the publication of the award and his involvement "than the student who receives it." *Id.*

In the Letter to Dr. Barry and Dr. Bruder, Dr. Roussel indicated she believed it was in the best interests of the Department for her to remove plaintiff from teaching CODI 118, Introduction to Communicative Disorders. *R. 106-9.* Dr. Roussel discussed the student feedback she had received as well as an interview she had conducted with plaintiff's GA (Graduate Assistant). *Id.* The GA stated the students were concerned that plaintiff's focus in teaching the class left them unprepared for their subsequent disorder-specific classes and was "a misrepresentation of what a speech language pathologist does." *Id.* Dr. Roussel proposed that plaintiff be assigned to teach 1 section of CODI 274 and 2 sections of UNIV 100. *Id.*

The Discussion Paper set forth the reasons for requesting that plaintiff be reassigned to a different department and stated the faculty members' and students' perceived problems with plaintiff's teaching and instruction in his classes at ULL. *R. 103-3*. It noted that plaintiff's "graduate level electives rarely if ever have any students enroll" and listed numerous "witnessed" instances of plaintiff's erratic behavior in interactions with his colleagues and students in the Department. *Id.* Ultimately, it recommended that plaintiff be relocated within ULL to "make use of his academic background and experience." *Id.*

It is axiomatic that ULL along with its deans, department heads and faculty have legitimate, common interests in their faculty members and that they have a duty to evaluate the performance of their professors, including Dr. Oller. The Court finds that the statements in the Emails, the Letter and the Discussion Paper were made within the scope of the parties' employment relationships and are therefore subject to conditional or qualified privilege. *See Mbarika*, 992 So.2d at 564-65; *see also, Dominguez v. Babcock*, 727 P.2d 362, 366 (Colo.1986) (holding memorandum by faculty members setting forth their reasons for requesting that a department head be reassigned was subject to qualified privilege under Restatement (Second) Torts, § 596)). In *Mbarika*, the court of appeal held that conditional privilege applies to a University department chair's assessment of a faculty member's performance. *Mbarika*, at 564-65.

Because the privilege exists in this matter, plaintiff is required to show that the conditional privilege was abused. As set forth above, mere negligence, gross negligence, and even failure to investigate the alleged defamatory statement are insufficient to show abuse of the privilege. The plaintiff is required to show that the defendants knew the matter to be false or acted in reckless disregard as to its truth or falsity. This requires a showing that the publication was deliberately falsified or published despite awareness of its probable falsity.

Plaintiff contends the motions for summary judgment should be denied because he has a motion to compel "critical discovery" pending before the Magistrate Judge which will "obviously ascertain whether or not Dr. Barry knew about the Discussion Paper and whether he adopted, ratified or published it." *R. 103*. In his May 19, 2014 deposition, plaintiff stated that he had no statements, written or oral, made by Dr. Barry that would support a claim for defamation and that he intended to voluntarily dismiss the defamation claim against him. *R. 92-5, Plaintiff's Depo.* In his Opposition, plaintiff contends that he did not have possession of the Discussion Paper which was presented at a meeting Dr. Barry attended. In a Motion To Compel filed on June 25, 2014, plaintiff states that he filed a request for interrogatories requesting that all defendants identify every oral statement and document that "indicated any type of connotation that is negative, bad, belittling, insulting, untrue, discouraging detracting or showing anger with Plaintiff." *R. 104*. Defendants objected to the interrogatory for a number of reasons, including that the request was overly broad and irrelevant as it was not reasonably calculated to lead to admissible evidence. *R. 103-4, No. 16*. The Court agrees that such random opinions and subjective statements as those listed in the request do not rise to the level of "reckless disregard" necessary to overcome the conditional privilege in this case, and will therefore address defendants' motions. *See, Trentecosta*, 703 So.2d at 565.

Plaintiff questions the credibility of Dr. Damico's testimony stating that he, alone, prepared the Discussion Paper and affixed Dr. Roussel's and Dr. Ball's names to the paper without their authorization. *R. 123-2*. He further testified that although he did not present the Discussion Paper to Dr. Bruder before the meeting, during the meeting Dr. Barry raised a number of the same points he had listed in the Discussion Paper. *Id.* Dr. Damico's testimony has no affect on whether or not defendants' alleged communications in the Discussion Paper were subject to conditional privilege. The defendants were faculty

9.

members in plaintiff's Department who had concerns and valid interests in the success and validity of the Department. In their positions, defendants had the opportunities to observe and receive input from colleagues and students about plaintiff's work. The publications cite interviews with students as well as personal observations.

Nor is plaintiff's affidavit denying every statement made in the Discussion Paper and in the Letter, *R. 118-3*, sufficient to establish the knowing or reckless disregard for the truth standard the Louisiana Supreme Court has adopted as to speech on matters of public concern such as in this case – evaluation and assessment of a faculty member's contributions to the department. *See, Mbarika*, 992 So. 2d at 564-65; *Kennedy*, 935 So.2d at 685.

Based on the record before it, the Court finds that plaintiff has failed to show that the publications were deliberately falsified or published despite awareness of its probable falsity or that defendants entertained serious doubts as to the truth of the publications. *See, Hakim v. O'Donnell*, — So.3d —, 2014 WL 2875037, 9 (La.App. 2 Cir.,2014)(citing *Kennedy*, 935 So. 2d at 688; *St. Amant*, 390 U.S. at 731). Accordingly, defendants' motions for partial summary judgment on plaintiff's defamation claims shall be granted as to both Dr. Roussel and Dr. Barry.

B. *Plaintiff's Cross-Motions For Summary Judgment*

   1. *Dr. Barry*

Plaintiff requests that the Court grant his motion pursuant to Rule 56(d), which provides in pertinent part:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
> Fed. R. Civ. P. 56(d).

"Rule 56(d) discovery motions are broadly favored and should be liberally granted because the rule is designed to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose. The nonmovant, however, may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts. Rather, a request to stay summary judgment under Rule 56(d) must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion. If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment." *Raby v. Livingston,* 600 F.3d 552, 561 (5th Cir., 2010). Thus, to obtain a Rule 56(d) continuance in order to conduct further discovery prior to a ruling on a motion for summary judgment, the nonmovant must make essentially three showings: (1) a description of the particular discovery the movant intends to seek; (2) an explanation showing how that discovery would preclude the entry of summary judgment; and (3) a statement justifying why this discovery had not been or could not have been obtained earlier. *Id.*

The record indicates that a Scheduling Order was issued in this case on July 20, 2012. Multiple motions filed by both plaintiff and defendants have been granted continuing the pre-trial deadlines, including discovery, over the course of one and one-half years. *R. 23, 28, 33, 43, 55.* Plaintiff has had more than adequate time to conduct discovery. Plaintiff contends, however, the Motions should be denied because he has a motion to compel interrogatory responses pending before the Magistrate Judge requesting that Dr. Barry identify every "negative, bad, belittling, insulting, untrue, discouraging detracting or showing anger with Plaintiff." *Id. at Exh. 2.* As the Court has found that this information can not rise to the level

11.

of "reckless disregard" necessary to overcome the conditional privilege of the publications alleged in plaintiff's claims against Dr. Barry, plaintiff's Cross Motion will be denied.

### 2. Dr. Roussel

Plaintiff contends his Cross Motion should be granted because there are genuine issues of material facts as to the defamation claim against Dr. Roussel. For the reasons stated in the Court's analysis of defendants' Motion For Partial Summary Judgment on plaintiff's claims against Dr. Roussel, plaintiff's Cross Motion will be denied.

### IV. Conclusion

The Court finds that the publications at issue were subject to a conditional or qualified privilege. As plaintiff failed to submit evidence sufficient to demonstrate that he will be able to meet his burden of proof at trial that the privilege was abused, plaintiff's defamation claims against Dr. Roussel and Dr. Barry must be dismissed. Defendants' Motions for Partial Summary Judgment will be granted as to Dr. Roussel and Dr. Barry and plaintiff's Cross Motions will be denied.

_____
Richard T. Haik, Sr.
United States District Judge.