U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED   LAFAYETTE

AUG 2~ 2014

TONY R. ~~~~, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

Oller                                                    Civil Action No. 6:11-CV-002207

versus                                                   Judge Richard T. Haik, Sr.

Roussel, et al                                           Magistrate Judge. C. Michael Hill

## MEMORANDUM RULING

Before the Court is a Motion For Partial Summary Judgment On Plaintiff's
First Amendment Claims filed by Defendants, Nancye Roussel ("Dr. Roussel"),
individually and in her official capacity as Head of the Department of
Communicative Disorders at the University of Louisiana at Lafayette ("ULL"),  A.
David Barry ("Dr. Barry"), individually and in his official capacity as Dean of
College of Liberal Arts at ULL[1] and Martin J. Ball ("Dr. Ball"), individually and in
his official capacity as Professor of the Department of Communicative Disorders at
ULL, [Rec. Doc. 101], Plaintiff, John W. Oller, Jr.'s ("Dr. Oller"), Opposition and
Cross Motion for Partial Summary Judgment On His First Amendment Freedom
Of Speech Claim [Rec. Doc 121] and Defendants' Opposition to Plaintiff's Cross
Motion [Rec. Doc. 142].  For the following reasons, Defendants' motion will be
granted and Plaintiff's Cross Motion will be denied.

---

[1] Plaintiff states that since the filing of his lawsuit, Dr. Barry has resigned as Dean of the College
of Liberal Arts and therefore his designation as a defendant in his official capacity should be
substituted to reflect the current Dean, Jordan Kellman, pursuant to Fed. R. Civ. P. 25(d).

## I. Background

Dr. Oller is a tenured professor in the Communicative Disorders ("CODI") Department at University of Louisiana-Lafayette ("ULL"). *R. 121, Pl.'s Statement of Facts ¶ 1.* Dr. Oller began teaching in the ULL CODI Department in 1997. *R. 101.* In recent years, Dr. Oller's teaching assignments have changed. *R. 121, Pl.'s Statement of Facts ¶ 49.* Dr. Oller was offering graduate level courses, but few students were signing up for those classes. *R. 121, Barry Dep., p. 57.* His most recent teaching assignment is one CODI class, CODI 274, and two sections of a study skills class, UNIV 100. *R. 121, Pl's Statement of Facts ¶ 49.*

Dr. Oller's teachings and scholarship involve, *inter alia*, discussions of vaccines as causal factor in the development of autism. *R. 121, Pl.'s Statement of Facts ¶ 19, 55.* Many in the CODI Department do not agree with Dr. Oller's views and have had discussions about his role in the Department and its effect on students. *R. 121, Ex. 1-6.* Plaintiff contends the CODI Department has become hostile to his views on matters of professional and public concern including creationism, intelligent design and autism causation and remediation and that defendants have engaged in efforts to eliminate his contributions to the CODI Department. *R. 121.*

Dr. Oller filed a Complaint on December 24, 2012, asserting actions under 42 U.S.C. § 1983 for violation of his First Amendment right to free speech and his

right to freedom from retaliation as well as state law claims of breach of contract, detrimental reliance and defamation[2]. Dr. Oller contends that defendants retaliated against him based upon his beliefs in creationism, intelligent design and autism, and have therefore violated his First Amendment right to exercise free speech. *R. 1, R. 46.* As support, he cites to several actions. First when he was not allowed to use the textbooks he authored as primary source material for his classes. *R. 1, ¶ 59-69.* Dr. Oller was, however, allowed to use his textbooks as secondary source material for his classes. *R. 121, at 13.* Second, failing to assign him to teach certain classes within the CODI Department. *R. 1, ¶ 34-58.* Third, he was not awarded the Dorris B. Hawthorne Borris IV Professorship ("Hawthorne Professorship") in 2013. *R. 121, at 10.* Dr. Oller alleges he was essentially promised the Hawthorne Professorship at recruitment and awarding the Hawthorne Professorship to Dr. Ball, and not him, was retaliation for his views. *R. 121 at 13; Aff. Of John Oller, at 6.* Fourth, Dr. Oller alleges he was demoted from a Track IV to a Track III professor. *R. 121, at 10.* Track IV is reserved for professors who teach and direct graduate students. *R. 121, Barry Dep., at 57.* Dr. Oller has not taught or directed graduate students in recent years. *R. 121, Barry Dep., at 57.* Fifth, Dr. Oller alleges his lack of a merit pay raise since 2004 was retaliation for

---

[2] In a Judgment entered on May 2, 2014, the Court granted the defendants' motion for summary judgment and dismissed plaintiff's breach of contract claims against defendants. *R. 81.* On August 22, 2014, the Court granted defendants' motion for summary judgment as to Dr. Roussel and Dr. Barry, dismissing plaintiff's claims of defamation against those defendants. *R. 148.*

his beliefs.  *R. 101, Ex. A.*  Since 2008, there have been no merit pay raises within the CODI Department.  *R. 101, Ex. C, Aff. Of Kellman ¶ 17.*

Defendants move for summary judgment on the entirety of plaintiff's First Amendment claims of retaliation and the right to free speech.  *R. 101.*

## II. Standard

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248  (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Ragas*, 136 F.3d at 458.  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come

forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## III. Analysis

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...." 42 U.S.C. § 1983. "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it

5

designates.  Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir.1997). In this case, plaintiff claims that the free speech provision of the First Amendment provides the underlying constitutional violation.  Plaintiff prays that the Court issue a preliminary and permanent injunction and that the Court award damages against defendants in their individual capacities.

*1. First Amendment Retaliation Claim*

The plaintiff must meet four prongs to prevail on a first amendment retaliation claim: (1) the plaintiff must suffer an adverse employment decision; (2) the plaintiff's speech must involve a matter of public concern; (3) the plaintiff's interest in commenting on matters of public concern must outweigh the defendant's interest in promoting efficiency; and (4) the plaintiff's speech must have motivated the defendant's actions." *Finch v. Fort Bend Indep. School Dist.*, 333 F.3d 555, 563 (5th Cir.2003).  Defendants contend that plaintiff cannot establish an adverse employment action.

The Fifth Circuit has narrowly defined what constitutes an adverse employment decision.  *Harper v. City of Jackson Mun. Sch. Dist.*, 149 F. App'x 295, 302-03 (5th Cir. 2005) (citing *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir.2000)).   Adverse employment decisions are limited to discharges, demotions, refusals to hire, refusals to promote, and reprimands. *Green v. Adm'rs*

6

*of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir.2002); *Breaux*, 205 F.3d at 157. The list of actionable decisions is limited so Federal Courts do not get involved in trivial matters. *Breaux*, 205 F.3d at 157. Accordingly, even some decisions that have the effect of chilling free speech are not actionable if they do not fall within this narrowly defined list. *Id.*

In the context of educational institutions, "decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures, while extremely important to the person who dedicated his or her life to teaching, do not rise to the level of a constitutional deprivation. *Breaux*, 205 F.3d at 157. The Fifth Circuit has stated it has "neither the competency nor the resources to undertake to micromanage the administration of thousands of state educational institutions, and "[o]f all fields that the federal courts should hesitate to invade and take over, education and faculty appointments at [the university] level are probably the least suited for federal court supervision." *Dorsett*, 940 F.2d at 124.

As provided in the foregoing, in order to succeed on a First Amendment retaliation claim Dr. Oller must first show that he suffered an adverse employment decision. Dr. Oller alleges several actions to support his claim that he was retaliated against for exercising his free speech rights: (1) He was not allowed to use the textbooks he authored as a primary teaching sources for his classes, *R. 1, ¶ 59-69*; (2) he was only assigned to teach CODI 274 and two sections of UNIV 100,

*R. 1, ¶ 34-58*; (3) the Dorris B Hawthorne, Borris IV Professorship was awarded to Dr. Bell instead of him, *R. 121, Aff. Of John Oller, at 6*; (4) he was re-categorized as a Track III professor, *R. 121, at 10*; and (5) he has not received a merit pay raise since 2004, *R. 101, Ex. A*. Each allegation will be addressed in turn.

Not allowing Dr. Oller to use the textbook he authored as the primary textbook for his class is not an actionable decision. While it may be of great importance to Dr. Oller what textbook he uses as a primary source to teach his classes, textbook selection is certainly a departmental decision, and getting involved in textbook selection could only be considered micromanaging educational institutions, which the federal courts have "neither the competency nor the resources to undertake." *Dorsett*, 940 F.2d at 124. The Fifth Circuit has narrowly defined adverse employment decisions, and this does not fall within that narrowly defined category. *Breaux*, 205 F.3d at 157; *Jackson v. Texas Southern University*, --- F.Supp.2d ---, 2014 WL 496653 (S.D.Tex.,2014). Not being allowed to use a certain textbook to teach a class is not a discharge, demotion, refusal to hire, refusal to promote, or reprimand. *Green*, 284 F.3d at 657. Moreover, Dr. Oller has been permitted to use his textbooks as secondary sources for his classes. Accordingly, the Court will not consider textbook selection to be an adverse employment action.

Dr. Oller's teaching assignments do not form the basis of an adverse employment action. The Fifth Circuit is clear that teaching assignments do not rise

to the level of constitutional deprivation. *Harrington*, 118 F.3d at 365 (quoting *Dorsett* 940 F.2d at 123). Dr. Oller has not been fired, demoted, or formally reprimanded. *R. 101, Ex. A, at 344*. He has not been removed from the CODI Department, nor has he been removed from teaching CODI classes. *R. 121, Pl's Statement of Facts ¶ 49*. Dr. Oller is teaching CODI 274 to non-CODI majors and two sections of UNIV 100. *R. 121, Pl's Statement of Facts ¶ 49*. While it is unlikely this is a teaching assignment Dr. Oller desires, "'[u]ndesirable work assignments are not adverse employment actions.'" *Harper v. City of Jackson Mun. Sch. Dist.*, 149 F. App'x 295, 303 (5th Cir. 2005) (quoting *Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 555 (5th Cir.1997)). Although transfers to less prestigious and less interesting positions that can objectively be viewed as a demotion can be considered adverse employment actions, that law is not applicable in this instance since Dr. Oller was not transferred. *Click v. Copeland*, 970 F.2d 106, 108-110 (5th Cir. 1992). Furthermore, this Court is not in the position to decide where Dr. Oller's talents can best be used in the CODI department at ULL. That is an administrative decision. Accordingly, Dr. Oller's teaching assignments are not an adverse employment action.

Failing to award Dr. Oller a Hawthorne Professorship is not an adverse employment action. Awarding of Hawthorne Professorships are administrative matters. Not awarding Dr. Oller the Hawthorne Professorship was not a discharge,

demotion, refusal to hire, refusal to promote, or reprimand. *Green*, 284 F.3d at 657. The College Screening Committee and the University Selection Committee felt Dr. Ball was a better applicant than Dr. Oller for the Hawthorne Professorship that term. *R. 101, Ex. C. Aff. Of Kellman,* ¶ *15, 16.* Dr. Oller insists his record shows he was a better applicant for that term, considering his publications for that term were "substantial original pieces" and Dr. Ball published mostly edited volumes or material that had been available since the 1960s and 1970s. *R. 121, Aff. Of John Oller, at 6.* Clearly this is not an area for the Court to be involved. The Court does not have the knowledge or time to make determinations on the prestige and substance of scholarship in the communicative disorders field. The list of actionable decisions was limited to prevent the Federal Courts from getting involved in such relatively trivial matter. *Breaux*, 205 F.3d at 157. Plaintiff argues failing to renew his Hawthorne Professorship was an adverse employment action because he was essentially promised the Professorship at his recruitment and argues, "when a plaintiff has been denied a term, condition or privilege of employment he has suffered an adverse employment action." *Nelson v Univ. of Maine Sys.*, 923 F. Supp. 275, 281 (D. Me. 1996); *R. 121, at 13.* Dr. Oller, however, was recruited in 1996, and was not awarded the Hawthorne Professorship until 2004. *R. 121, Pl's Statement of Facts* ¶ *2, 8.* As evidenced by his employment for many years prior without the Hawthorne Professorship, the

Hawthorne Professorship was not a term of his employment.  Accordingly, the decision not to award Dr. Oller a Hawthorne Professorship is not an adverse employment action.  Even assuming, *arguendo*, that not awarding Dr. Oller the Hawthorne Professorship was an adverse employment action, neither Dr. Roussel[3], Dr. Barry, nor Dr. Ball were involved in the Hawthorne Professorship decision.  *R. 101, Ex. C. Aff. Of Kellman, ¶ 7, 10.*

Re-categorizing plaintiff as a Track III Professor was not an adverse employment action.  Dr. Oller was previously a Track IV Professor. *R. 121, at 10.* However, to qualify as a Track IV Professor, the professor has to teach and direct graduate students. *R. 121, Barry Dep., at 57.* For several years prior to the re-categorization Dr. Oller had not been teaching graduate courses. *R. 121, Barry Dep., at 57.* The re-categorization is not truly an independent decision.  More accurately, it is a necessary result of Dr. Oller's teaching assignments and teaching output.[4] *R. 121, Barry Dep., at 57.* Accordingly, the re-categorization as a Track III Professor is not an adverse employment action.

Not awarding Dr. Oller's a merit pay raise since 2004 does not rise to the level of a constitutional deprivation. The Fifth Circuit is clear that decisions

---

[3] Dr. Roussel attended the Screening Committee meeting for the awarding of Professorships, but both she and Dean Kellman state Dr. Roussel offered no opinion on the applicants. Dr. Roussel did not attend the subsequent University Selection Committee Meeting. *R. 101, Ex. C, Aff. Of Kellman, ¶ 7, 10; R. 101, Ex. B, Aff. Of Roussel ¶ 3.*
[4] Dr. Oller in previous years offered graduate courses but no students signed up for the courses. *R. 121, Barry Dep., at 57.*

concerning pay increases in educational institutions are not adverse employment actions. *Breaux*, 205 F.3d at 157.  In *Harrington*, the plaintiffs, law professors, complained they suffered an adverse employment action when they were not awarded merit pay raises in the amount they thought they deserved. *Harrington v. Harris*, 118 F.3d 359, 366 (5th Cir. 1997).  The plaintiffs' merit pay raises were not significantly different from the other professors at the law school.  *Id.* Accordingly, the Fifth Circuit found no adverse employment action. *Id.*  Similarly, here, there is no significant variation in the amount of merit pay raises among the professors in the CODI Department. *R. 101, Ex. C, Aff. Of Kellman ¶ 17.*  In fact, there has been no merit pay raise within the CODI Department since 2008. *R. 101, Ex. C, Aff. Of Kellman ¶ 17.*  Accordingly, the decision not to award Dr. Oller a merit pay raise is not an adverse employment action.

As to Defendants' contention that there was no adverse employment action, the Court agrees. *R. 101.*

## 2. First Amendment Free Speech Cross Motion

Plaintiff contends that defendants' actions violated his right to free speech under the First Amendment by impermissibly interfering with his duty to educate his students in areas of his expertise and assignment in the CODI department.  In support of his cross motion Dr. Oller alleges essentially the same actions asserted in his retaliation claim: (1) not allowed to use the textbooks he authored as primary

teaching sources; (2) assigned to teach only one class in the CODI department - CODI 274; (3) not being asked to participate in policy committees; and (4) being urged to leave the CODI department.   By taking these actions, he contends, defendants "are dictating to Dr. Oller what he must teach his students, determining what readings he should rely on and severely limiting his freedom of expression."

Defendants argue that Oller has not been prohibited from stating his beliefs on the autism epidemic or censored with regards to the subject matter he teaches.  Nor has he been prohibited from using his textbook, and in fact he uses his textbook as a secondary source in his CODI course.

"Public employees do not surrender all their free speech rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen on matters of public concern. See, e.g., *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *Connick v. Myers*, 461 U.S. 138, 147 (1983); *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 466 (1995). At the same time, '[t]his prospect of [First Amendment] protection ... does not invest them with a right to perform their jobs however they see fit.' *Garcetti v. Ceballos*, 547 U.S. 410 (2006).  The relationship between the speaker's expressions and employment is a balancing test. A public employee's speech is protected by the First Amendment when the interests of the worker 'as a citizen in commenting upon matters of public concern' outweigh the interests of

the state 'as an employer, in promoting the efficiency of the public services it performs through its employees.' *Pickering*, 391 U.S. at 568." *Williams v. Dallas Independent School Dist.*, 480 F.3d 689, 691-692 (5th Cir. 2007).

Dr. Oller contends that both his textbooks and his teachings relate to "the public concerns of creationism, intelligent design and evolution" as well as "the autism epidemic." *R. 121*.   He cites *Pickering v. Board of Education*, 391 U.S. 563 (1968), in support of his contentions that defendants' alleged actions of "banning his textbooks as primary sources, denying his opportunities to teach within his area of expertise and assignment, diminishing his class size, excluding his participation in policy committees and urging him to leave the CODI department" violated his First Amendment right to free speech.

In *Pickering* a teacher's letter to the local newspaper protesting the manner in which his school distributed funds between athletic and academic programs was held to be protected speech.   The Supreme Court found that the relationship between the speaker's expressions and employment is a balancing test.   A public employee's speech is protected by the First Amendment when the interests of the worker "as a citizen in commenting upon matters of public concern" outweigh the interests of the state "as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. at 568

Oller's reliance on *Pickering,* however, is now inapposite. The Supreme Court's pronouncement in *Garcetti v. Ceballos,* 547 U.S. 410 (2006) added a threshold layer to the *Pickering* balancing test. *Williams,* 480 F.3d at 692.  Under *Garcetti,* the court must shift its focus from the content of the speech to the role the speaker occupied when he said it. Emphasizing the distinction between a speaker acting in his role as "citizen" and his role as "employee," *Garcetti* held that the First Amendment does not protect "expressions made pursuant to their official duties." *Id.*  Even if the speech is of great social importance, it is not protected by the First Amendment so long as it was made pursuant to the worker's official duties. *Id.*    In essence, *Garcetti* held that public employees do not speak as citizens when they "make statements pursuant to their official duties," and accordingly, such speech is not protected by the First Amendment.  *Garcetti,* 547 U.S. at 422.

Here, Dr. Oller's position with ULL is that of a professor.  The alleged actions by defendants which he contends constitute violations of his speech are all related to his performance and official duties as a ULL professor.  "Activities undertaken in the course of performing one's job are activities pursuant to official duties." *Williams,* 480 F.3d at 693 (citing *Garcetti* at 1960).  The Court finds that Dr. Oller's speech was made in the course of performing his employment, and therefore, is not protected by the First Amendment.

*IV. Conclusion*

Based on the foregoing, the Court finds that Dr. Oller has not suffered an adverse employment action in order to establish a prima facie case of retaliation under § 1983 and that Dr. Oller's speech is not protected by the First Amendment. Accordingly, Defendants' Motion for Partial Summary Judgment as to Dr. Oller's First Amendment Claims will be granted and Plaintiff's Cross Motion for Summary Judgment will be denied.

Because plaintiff's federal claims are dismissed, the Court will decline to retain supplemental jurisdiction over plaintiff's remaining state law claims. 28 U.S.C. §1367. "Under § 1367, a district court may 'entertain state law claims pursuant to its supplemental jurisdiction, provided the claims arise from the case or controversy over which the district court had original jurisdiction.' When all federal claims are dismissed from the case or controversy before the district court, however, § 1367(c)(3) permits the district court to exercise 'wide discretion in determining whether to retain jurisdiction over the remaining state law claims.'" *Martin v. Waring Investments Inc.*, 323 Fed.Appx. 313, 317 (5th Cir. 2009) (quoting *Welch v. Thompson*, 20 F.3d 636, 644 (5th Cir. 1994)).

Richard T. Haik, Sr.
United States District Judge

16